IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA J. MADONNA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  22-1060 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                              May   16   , 2023

Linda J. Madonna ("Plaintiff") seeks review of the Commissioner's decision

denying her application for disability insurance benefits ("DIB").  For the reasons that

follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is

supported by substantial evidence and will affirm the decision of the Commissioner.

I.      **PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on August 13, 2019, alleging that her disability

began on April 15, 2018, as a result of generalized anxiety disorder ("GAD"), major

depressive disorder ("MDD"), a heart problem, osteoarthritis of the neck, back, and hips,

and fibromuscular dysplasia ("FMD").  Tr. at 57-58, 69, 168, 207.[2]  Plaintiff's

---

[1]In her Complaint, Plaintiff names "Commissioner of Social Security" as the
defendant in the case.  Doc. 1, Caption.  Kilolo Kijakazi is currently the Acting
Commissioner of Social Security, see https://www.ssa.gov/agency/commissioner/ (last
visited Apr. 18, 2023).  Therefore, I have amended the caption to identify the Acting
Commissioner by name.

[2]It appears that Plaintiff previously filed for DIB and the application was denied at
the initial consideration level on March 24, 2011, and Plaintiff did not seek further
review.  Tr. at 204.  To be entitled to DIB, Plaintiff must establish that she became
disabled on or before her date last insured ("DLI").  20 C.F.R. § 404.131(b).  The

application was denied initially and on reconsideration, id. at 88-91, 93-95, and Plaintiff

requested a hearing before an ALJ.  Id. at 96-97.  After holding a hearing on January 22,

2021, id. at 37-56, the ALJ found on March 19, 2021, that Plaintiff was not disabled.  Id.

at 16-29.  The Appeals Council denied Plaintiff's request for review on January 24, 2022,

id. at 1-3, making the ALJ's March 19, 2021 decision the final decision of the

Commissioner.  20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on March 21, 2022, Doc. 1, and

the matter is now fully briefed and ripe for review.  Docs. 9-11.[3]

## II.    LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.    Whether the claimant is currently engaged in
> substantial gainful activity;
>
> 2.    If not, whether the claimant has a "severe
> impairment" that significantly limits her physical or mental
> ability to perform basic work activities;

---

Certified Earnings Record indicates and the ALJ found that Plaintiff was insured through
December 31, 2023.  Tr. at 18, 187.

[3]Defendant consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order, In Re:  Direct Assignment of Social Security Appeals to
Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020) (appendix
dated June 21, 2018).  Plaintiff is deemed to have consented based on her failure to file
the consent/declination form.  See Docs. 3, 7, 8.

   3.  If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

   4.  If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and

   5.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019)

(substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

## III.    DISCUSSION

### A.    ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffered from the severe impairments of lumbar and cervical disc disease.  Tr. at 19.  In addition, the ALJ found that Plaintiff's hip pain, concussion, depressive disorder, and anxiety disorder were non-severe, and that her other conditions were not medically determinable.  Id. at 19-20.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 21, and that she retained the RFC to perform medium work except that she was able to occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and balance stoop, kneel, crouch, and crawl.  Id. at 21.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a home health care aid as it is generally performed, as well as other jobs in the national economy. Id. at 28-29.  Therefore, the ALJ found that Plaintiff was not disabled.  Id. at 29.

Plaintiff claims that the ALJ erred by failing to (1) properly assess the opinion evidence offered by Nurse Practioner ("NP") Karena Hammon, and (2) find that Plaintiff's concussion was a severe impairment and incorporate related limitations in the RFC assessment.  Doc. 9 at 3-12.  Defendant responds that substantial evidence supports the ALJ's opinion evaluation, and the ALJ correctly evaluated Plaintiff's concussion.

4

Doc. 10.  In reply, Plaintiff argues that Defendant has misapplied governing regulations
and reasserts that the ALJ failed to properly consider and explain the consideration of the
opinion evidence.  Doc. 11.

### B.      Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on August 9, 1966, making her 51 years of age at the time of
her alleged onset date (April 15, 2018), and 54 years of age at the time of the ALJ's
decision denying her benefits (March 19, 2021).  Tr. at 40-41, 168.  She completed ninth
grade, id. at 41, 208, and has past relevant work as a home health care aide.  Id. at 51-52,
208.

At the administrative hearing, Plaintiff explained that her anxiety prevents her
from working.[4]  Tr. at 42.  Her anxiety gets worse when she has to interact with others,
id. at 43, and she suffers from panic attacks once a week where she feels overwhelmed
and becomes short of breath and feels dizzy and fearful.  Id. at 45.  In addition, Plaintiff
said that her depression causes uncontrollable crying.  Id. at 46.  Medication for
depression helps "for the most part," but the anxiety medication sometimes does not help,
id. at 45-46, and the medication causes drowsiness and insomnia.  Id. at 46.

In addition, Plaintiff complained of constant pain in her hips which was worse at
night.  Tr. at 47.  Plaintiff testified that she can walk a block, but the pain is unbearable,
and that she has to sit for about 20 minutes to rest.  Id. at 48.  She can stand for 20

---

[4]At the time of the hearing, Plaintiff had recently returned to work part time, but
planned to stop working because "it's not working out for me like I had hoped" due to
anxiety.  Tr. at 42.  The ALJ found that this work did not constitute substantial gainful
activity.  Id. at 19.

minutes to half an hour.  Id. at 48.  She continued to do some cooking and the dishes, but had to lean on the sink and stove to do both.  Id. at 49.  Plaintiff stated that hot and cold compresses seem to help, that over-the-counter pain medicine does not help, and that her doctors "don't seem to want to prescribe" pain medication.  Id. at 47-48.

Plaintiff also complained of daily headaches and dizzy spells attributable to FMD.[5] Tr. at 50.  Plaintiff testified that sometimes the headache will go away with extra strength Tylenol, but other times, she has to stay in the quiet in a dark room.  Id.

A VE classified Plaintiff's home health care aide position as medium work, but as Plaintiff performed the work, the job was heavy.  Tr. at 52.  The ALJ asked the VE to consider someone of Plaintiff's age, education, and work experience, who could perform medium work, limited to occasional climbing of ramps , stairs, ladders, ropes, and scaffolding, occasional balancing, stooping, kneeling, crouching, and crawling.  Id.  The VE testified that such a person could perform the job of home health aide as the job is customarily performed, but not as Plaintiff performed it.  Id.  In addition, the VE testified that there were unskilled jobs that could be performed with the limitations previously identified, including laundry laborer, machine feeder, and dining room attendant/table busser.  Id. at 53.  The VE also noted that if an individual would be off task for 25% of the time, such an individual could not maintain competitive work.  Id.

---

[5]"Fibromuscular dysplasia is a condition that causes narrowing (stenosis) and enlargement (aneurysm) of the medium-sized arteries in your body.  Narrowed arteries can reduce blood flow and affect the function of your organs," "most commonly in the arteries leading to the kidneys and brain."  See https://www.mayoclinic.org/diseases-conditions/fibromuscular-dysplasia/symptoms-causes/syc-20352144 (last visited Apr. 18, 2023).  The ALJ found Plaintiff's FMD not determinable due to lack of objective evidence.  Tr. at 20.

C.     **Summary of the Medical Record**

With respect to Plaintiff's medical history predating her April 2018 onset date,

Plaintiff reported that in 2014 she was diagnosed with FMD.  Tr. at 545.  In November

2016, x-rays revealed mild multilevel disc disease of the cervical spine, mild disc space

narrowing of the lumbar spine (specifically L4-5), and Grade 1 anterolithesis.[6]  Id. at 309,

311.  On June 1, 2017, Plaintiff reported to Stephanie Packard, PA-C, at the Penn

Medicine CCH Emergency Department, that she had been suffering for many months

with left sided mid and upper back pain.  Id. at 316.  Physicians' Assistant ("PA")

Packard noted thoracic tenderness and spasm, but no cervical or lumbar area tenderness.

Id. at 318.  PA Packard diagnosed Plaintiff with chronic thoracic back pain and spasm

and released Plaintiff on meloxicam and tizanidine.[7]  Id. at 326-27.  Additionally,

Plaintiff has a history of anxiety disorder, described as mild to moderate on March 6,

2018, for which she was prescribed fluoxetine.[8]  Id. at 454.

---

[6]"In anterolisthesis, the upper vertebral body is positioned abnormally compared to the vertebral body below it.  . . .  The amount of slippage is graded on a scale of 1 to 4. Grade 1 is mild (10% slippage), while grade 4 is severe (100% slippage)."  See https://www.cedars-sinai.org/health-library/diseases-and-conditions/a/anterolisthesis.html#:~:text=In%20anterolisthesis%2C%20the%20upper%20vertebral,severe%20(100%25%20slippage) (last visited Apr. 18, 2023).

[7]Meloxicam is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.  See https://www.drugs.com/meloxicam.html (last visited Apr. 24, 2023).  Tizanidine is a short-acting muscle relaxer used to treat spasticity by temporarily relaxing muscle tone. See https://www.drugs.com/tizanidine.html (last visited Apr. 24, 2023).

[8]Fluoxetine (brand Prozac) is an antidepressant used to treat people with depression, panic, anxiety, or obsessive-compulsive symptoms.  See https://www.drugs.com/fluoxetine.html (last visited Apr. 18, 2023).

On May 14, 2018, after her alleged disability onset date, Plaintiff saw her primary

care provider, Valerie McAuley, D.O., for complaints of irregular menstrual periods and

restless leg syndrome.  Tr. at 451-52.  Dr. McAuley noted that Plaintiff was not

experiencing symptoms of anxiety or depression.  Id. at 452.  On July 5, 2019, Dr.

McAuley saw Plaintiff for follow up from her gallbladder surgery the month before and

for a mammogram.  Id. at 444.[9]  Dr. McAuley again noted that Plaintiff did not have any

depressive or anxiety symptoms present.  Id. at 445.  On September 3, 2019, Plaintiff saw

Dr. McAuley for a physical, at which time, the doctor noted that "[t]he patient feels well

with no complaints."  Id. at 439.  The doctor's notes indicate a normal mental status

exam, normal strength and tone in all extremities, no joint pain, calf pain, or muscle

cramps, and no dizziness or weakness.  Id. at 440-41.

On November 14, 2019, Karena Hammon, N.P., conducted an Internal Medicine

Examination.  Tr. at 545-49.  NP Hammon noted Plaintiff had a normal gait, could

perform a full squat, and could walk on heels and toes with no difficulty.  Id. at 547.  On

examination, NP Hammon found no abnormality in the thoracic spine, a negative

---

In the November 14, 2019 Mental Status Evaluation conducted by John Kajic, Psy.D., referenced infra at 9, Plaintiff reported being hospitalized at Brandywine in 2014 for severe anxiety and depression, and participating in outpatient treatment at Downingtown Human Services until 2016.  Tr. at 566.  Those records predate Plaintiff's alleged disability onset date and are not contained in the record.

[9]On June 19, 2019, Donelle Rhoads, M.D., laparoscopically removed Plaintiff's gallbladder, tr. at 418, to address previously diagnosed gallstones.  Id. at 635.  Plaintiff followed up with Dr. McAuley on June 21, 2019.  Id. at 449.

straight-leg raising test,[10] stable joints with no tenderness, redness, heat, or effusion, no

sensory deficit, and 5/5 strength in all extremities.  Id. at 547-48.  NP Hammon provided

a Medical Source Statement indicating that Plaintiff could frequently lift up to 10 pounds

and occasionally lift and carry up to 50 pounds.  Id. at 552.  In addition, NP Hammon

found that Plaintiff could sit for a total of 5 hours, stand for a total of 4 hours, and walk

for a total of 3 hours in an 8-hour day.  Id. at 553.

On the same day, Dr. Kajic conducted a Mental Status Evaluation, tr. at 566-70,

noting that Plaintiff reported being "slightly anxious," with appropriate eye contact,

normal motor behavior, coherent and goal directed thought processes, intact attention,

concentration, and memory skills, average cognitive functioning, and good insight and

judgment.  Id. at 568-69.  In an accompanying Medical Source Statement, the doctor

found that Plaintiff had no limitation in the abilities to understand, remember, and carry

out simple instructions, and understand and remember complex instructions; and mild

limitation in the ability to carry out complex instructions and make judgments on

complex work-related decisions.  Id. at 571.  With respect to the ability to interact with

others, the doctor found that Plaintiff had mild limitation in the ability to interact with the

public, supervisors, and co-workers, and respond appropriately to usual work situations

and changes in a routine work setting.  Id. at 572.

---

[10]The straight leg-raising test checks for impingement of the nerves in the lower
back by determining whether there is pain when "the symptomatic leg is lifted with the
knee fully extended; pain in the lower extremity between 30 and 90 degrees of elevation
indicates lumbar radiculopathy, with the distribution of the pain indicating the nerve root
is involved."  Dorland's Illustrated Medical Dictionary, 32nd ed (2012) ("DIMD"), at
1900.

On August 7, 2020, Plaintiff saw Dr. McAuley for increased anxiety,  pain in her

right arm, weakness, and hip pain.  Tr. at 655.  Plaintiff reported  anxiety, fear, impaired

cognitive function, inability to concentrate, insomnia, mood changes, and panic attacks,

back pain and pain in the right elbow.  Id. at 656.  The doctor gave Plaintiff an injection

of methylprednisolone acetate of the elbow and added lorazepam to Plaintiff's

medication regime.[11]  Id. at 657.

On October 24, 2020, Plaintiff hit the back of her head on the freezer door and was

seen at Brandywine Hospital's Emergency Department.  Tr. at 660.  Plaintiff complained

of a mild aching pain in the back of her head, some nausea, and some dizziness that had

resolved.  Id.  She did not lose consciousness and denied blurry or double vision, altered

speech, altered coordination, weakness, or paresthesias.  Id.  Emily Starczewski, PA-C,

determined that Plaintiff's symptomatology did not warrant a CT scan and released

Plaintiff to follow up with her primary care physician.  Id. at 663.  On October 29, 2020,

Plaintiff followed  up with Dr. McAuley, who diagnosed Plaintiff with a concussion

without loss of consciousness, post-concussion syndrome, post-concussion headache,

vertigo, and neck pain.  Id. at 654.  On examination, Dr. McAuley noted

> alert and oriented x 3 with no impairment of recent or remote
> memory, normal attention span and ability to concentrate,
> able to name objects and repeat phrases.  Appropriate fund of

---

[11]Methylprednisolone is a corticosteroid medication used to treat many different inflammatory conditions such as arthritis, lupus, psoriasis, ulcerative colitis, allergic disorders, glad disorders, and conditions that affect the skin,e yes, lungs, stomach, nervous system, or blood cells.  See https://www.drugs.com/methylprednisolone.html (last visited Apr. 24, 2023).  Lorazepam is a benzodiazepine used to treat anxiety disorders.  See https://www.drugs.com/lorazepam.html (last visited Apr. 19, 2023).

>knowledge, normal visual acuity, pupils equal and reactive to
>light and accommodation, normal sensation of trigeminal
>nerves, symmetrical functioning of facial nerves, normal
>hearing, normal gag reflex, symmetrical functioning of
>accessory nerves, symmetrical functioning of hypoglossal
>nerve, normal sensation, normal coordination and upper and
>lower extremity deep tendon reflexes intact bilaterally.

Id.

On November 5, 2020, Dr. McAuley completed two Treating Source Statements addressing Plaintiff's physical and psychological conditions.  Tr. at 666-69 (physical), 671-75 (psychological).  In the physical assessment, Dr. McAuley opined that Plaintiff could occasionally lift and carry less than 10 pounds; sit for 2 hours and stand/walk for less than 1 hour in an 8-hour workday.  Id. at 667.  Additionally, Dr. McAuley stated that Plaintiff would need to recline or lie down 4-6 times a day for 10-15 minutes, and would be off task more than 25% of the time.  Id. at 666-67.  Dr. McAuley stated that Plaintiff suffered from post-concussion syndrome with symptoms of dizziness, vertigo, nausea, vomiting, photophobia, phonophobia, headaches, unsteady balance, and delayed cognitive processes/function, and that reading from paper/screen and exertion aggravated Plaintiff's symptoms.  Id. at 668.  In the psychological assessment, Dr. McAuley opined that Plaintiff was extremely limited in the ability to concentrate, persist, or maintain pace; markedly limited in her short term memory and understanding and carrying out detailed instructions; and mildly limited in the abilities to remember locations and work-like

11

procedures and to understand and carry out very short and simple instructions.  Id. at 673-74.[12]

At the initial consideration stage on December 26, 2019, Joanna DeLeo, D.O., found that Plaintiff's physical impairments were not severe, and Peter Garito, Ph.D., found that Plaintiff suffered from depressive, bipolar, and related disorders and anxiety/obsessive-compulsive disorders, resulting in mild limitation in the ability to interact with others and no limitations in the other areas of functioning.  Tr. at 64-65.  At the reconsideration level, David John Ferner, D.O., found that Plaintiff's physical impairments limited her to occasionally lifting/carrying 50 pounds; frequently lifting/carrying 25 pounds; standing/walking for 6 hours; and sitting for 6 hours in an 8-hour workday; with additional postural limitations.  Id. at 79-80.  Thomas E. Fink, Ph.D., found that Plaintiff's mental impairments posed mild limitations in her ability to interact with others with no limitations in the other areas of functioning.  Id. at 77.

### D.     Plaintiff's Claims

#### 1.     Consideration of Opinion Evidence

Plaintiff claims that the ALJ erred in assessing the medical source opinion of NP Hammon.  Doc. 9 at 3-7; Doc. 11 at 1-4.  Defendant responds that the ALJ adequately

---

[12]The form used a 5-point scale based on the individual's ability to function independently, appropriately, effectively, and on a sustained basis: "no limitation;" "mildly limited" meaning "slightly limited;" "moderately limited" meaning "fair;" "markedly limited" meaning "seriously limited;" and "extremely limited" indicating "that the individual is unable to function in this area."  Tr. at 673.

explained his consideration of NP Hammon's opinion and the ALJ's determination and

RFC are supported by substantial evidence.  Doc. 10 at 9-13.

The regulations governing the consideration of opinion evidence, which apply to

Plaintiff's claim because it was filed after March 27, 2017, focus on the persuasiveness of

each medical opinion.

> We will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.

20 C.F.R. § 404.1520c(a).[13]  The regulations list the factors to be utilized in considering

medical opinions:  supportability, consistency, treatment relationship including the length

and purpose of the treatment and frequency of examinations, specialization, and other

factors including familiarity with other evidence in the record or an understanding of the

disability program.  Id. § 404.1520c(c).  The most important of these factors are

supportability and consistency, and the regulations require the ALJ to explain these

factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).  The

regulations explain that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id.

§ 404.1520c(c)(1) .  In addition, "[t]he more consistent a medical opinion(s) . . .  is with

---

[13]In contrast, the regulations governing prior applications spoke in terms of the
weight to be given each opinion, including controlling weight for the opinions of certain
treating sources.  20 C.F.R. § 404.1527.

the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be." Id. § 404.1520c(c)(2).

"The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, the ALJ found NP Hammon's opinion "partially persuasive," noting that "[t]his opinion is not completely supported by the findings of the consultative examiner; nor it is completely consistent with the overall record." Tr. at 26.  The ALJ also specifically rejected NP Hammon's "limits relating to exposure to hazards and concerning sitting/standing/walking at one time and total time." Id.  Plaintiff argues that the ALJ's failure to specifically reject other aspects of NP Hammon's opinion means that the ALJ "assigned persuasive weight to the remainder of the opinion, which includes the portion discussing Plaintiff's ability to lift and carry." Doc. 9 at 4-5.  Plaintiff's argument focuses on NP Hammon's conclusions that Plaintiff could frequently lift up to 10 pounds and occasionally lift and carry up to 50 pounds. Tr. at 552.  In contrast, the ALJ found that Plaintiff could perform medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

Contrary to Plaintiff's argument, in determining an RFC, "an ALJ is not required to incorporate ever finding or limitation made by a medical source simply because the ALJ finds the opinion persuasive." Burrell v. Kijakazi, Civ. No. 21-3662, 2022 WL 742941, at *3 (E.D. Pa. Mar. 10, 2022) (citing Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) ("The ALJ was not required to adopt all of [the doctor's] opinion solely because she found the opinion as a whole persuasive . . . ."); see also Puerto v. Saul, Civ. No. 19-3109, 2020 WL 2744134, at *10 (E.D. Pa. May 27, 2020) ("an ALJ is not required to include each specific limitation in an RFC assessment or in a hypothetical to a VE") (citing Pascarello v. Berryhill, Civ. No. 18-3406, 2019 WL 2288233, at *8 (E.D. Pa. May 28, 2019)).  As the Third Circuit explained in Wilkinson, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight," because "the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner." 558 F. App'x at 256 (citing 20 C.F.R. § 1527(d)(2)); see also Titterington v. Barnhart, 174 F. App'x 6, 4 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). Thus, I conclude that the ALJ's failure to specifically mention rejecting NP Hammon's lifting and carrying restrictions does not constitute error.[14]

---

[14]In her Reply Brief, Plaintiff relies on Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981), and Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001), in arguing that the ALJ's implicit rejection of NP Hammon's opinion is insufficient.  Doc. 11 at 2.  In both Cotter and Fargnoli, the ALJ had failed to acknowledge relevant opinion evidence and offered no reason for its rejection.  Cotter, 642 F.2d at 707; Massanari, 247 F.3d at 43-44.  Here, the ALJ found NP Hammon's opinion only "partially persuasive" and explained that the

Moreover, the ALJ's finding that Plaintiff could perform the lifting and carrying requirements of medium work is supported by substantial evidence.  First, as the ALJ noted, NP Hammon's opinion is not "completely supported" by her own findings.  Tr. at 26.  On examination, NP Hammon noted that Plaintiff's joints were "stable and nontender," with no redness, heat, or effusion, and Plaintiff had a negative straight-leg raising test.  Id. at 547.  Plaintiff had a normal gait and stance, was able to walk on heels and toes with no difficulty, and could perform a full squat.  Id.  Plaintiff's deep tendon reflexes were equal in all extremities with no sensory deficit, strength of 5/5 in all extremities, with no muscle atrophy or edema.  Id. at 548.

Additionally, as the ALJ noted, NP Hammon's opinion is not "completely consistent with the overall record."  Tr. at 26.  During several examinations, Plaintiff was noted to have normal musculoskeletal range of motion and/or full strength in all extremities.  See id. at 482 (11/15/18 – Urgent Care visit for cold symptoms with normal musculoskeletal range of motion), 628 (1/13/19 – Brandywine Hospital Emergency Department for gallstones with notations of normal musculoskeletal range of motion and strength, no swelling), 441 (9/3/19 – Dr. McAuley physical with notations of a normal gait, tone, coordination and 5/5 strength in all extremities), 662 (10/24/20 – Brandywine Hospital Emergency Department for head injury with notations of non-tender cervical vertebral bodies, full cervical spine range of motion without pain or crepitus, no musculoskeletal swelling or deformity, 5/5 motor strength of the extremities).  Finally,

---

opinion is not "completely supported" by the provider's own examination findings, nor with the overall record.  Tr. at 26.

based on a review of the record at the reconsideration stage, Dr. Ferner determined that

Plaintiff was able to occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds,

consistent with the ALJ's determination that Plaintiff could perform the lifting/carrying

requirements of medium work.  Id. at 79.[15]  Thus, I conclude that the ALJ's

determination with respect to lifting/carrying is supported by substantial evidence.

> 2.     Concussion Syndrome

Plaintiff also complains that the ALJ erred in his assessment of Plaintiff's

concussion syndrome, claiming that the ALJ substituted his opinion for that of Plaintiff's

primary care provider, Dr. McAuley.  Doc. 9 at 7-12.  Defendant responds that

substantial evidence supports the ALJ's determination that Plaintiff's concussion was not

severe.  Doc. 10 at 13-19.

Plaintiff's argument is premised primarily on Dr. McAuley's November 5, 2020

psychological Treating Source Statement, Doc. 9 at 10, in which the doctor identified

post-concussion syndrome and other diagnoses arising from Plaintiff's head injury in

October 2020.  Tr. at 671.  As previously discussed, in this statement, Dr. McAuley

identified symptoms of neck pain/sprain, photophobia, phonophobia, headache,

dizziness/vertigo, nausea, and imbalance, and found that Plaintiff's concussive symptoms

resulted in extremely limited ability to concentrate, persist, or maintain pace; markedly

---

[15]Dr. McAuley completed a Treating Source Statement opining that Plaintiff could occasionally lift and carry less than 10 pounds.  Tr. at 667.  The ALJ found Dr. McAuley's opinion "not persuasive," noting that the opinion "is not generally consistent with the treatment records of Dr. McAuley."  Id. at 27.  Although Plaintiff has challenged the ALJ's consideration of Dr. McAuley's assessment of concussion-related limitations, see Doc. 9 at 8, Plaintiff has not challenged the ALJ's consideration of Dr. McAuley's opinions with respect to Plaintiff's physical limitations.

limited ability to understand and carry out detailed instructions and short term memory; and mildly limited ability to remember locations and work-like procedures and understand and carry out very short and simple instructions. Id. at 673-74. The ALJ found Dr. McAuley's opinions "not persuasive," noting that they were inconsistent with Dr. McAuley's own treatment records. Id. at 27.

The ALJ's conclusion with respect to Dr. McAuley's opinion is supported by substantial evidence. The Treating Source Statement is inconsistent with Dr. McAuley's treatment notes from the office visit a week earlier. Dr. McAuley's notes of the October 29 encounter indicate that Plaintiff had complaints of headache, slight right neck pain, nausea, dizziness and loss of balance, but not vomiting or blurred vision. Tr. at 652. The doctor's examination notes include "no impairment of recent or remote memory, normal attention span and ability to concentrate," "normal sensation, normal coordination and upper and lower extremity deep tendon reflexes intact bilaterally." Id. at 654. Thus, the limitations noted in Dr. McAuley's Treating Source Statement are inconsistent with the doctor's own treatment notes from one week earlier.

Similarly, when Plaintiff was seen in the Emergency Department of Bradywine Hospital after the head injury on October 24, 2020, Plaintiff reported a mild aching pain in the back of her head and a spinning sensation immediately after the injury that had subsided, but denied photophobia or visual disturbance, dizziness, lightheadedness, altered level of consciousness, altered speech or altered coordination. Tr. at 610, 660-61. In concluding that no CT scan was necessary, PA Starczewski noted that Plaintiff did not have a severe headache, no vomiting, or focal neurological deficit. Id. at 613, 663.

Because Dr. McAuley's assessment was not consistent with her own notes nor the

Emergency Department treatment notes, the ALJ's decision finding Dr. McAuley's

assessment not persuasive is supported by substantial evidence.

Plaintiff also complains that the ALJ relied on an improper ground in discounting

Plaintiff's concussion -- that it "did not exist for a continuous period of twelve months" --

because the duration requirement also encompasses impairments "expected to last for at

least 12 months."  Doc. 9 at 11 (citing 42 U.S.C. § 423(d)(1)(A)).[16]  Reviewing the

medical record, there is no indication that the symptoms related to Plaintiff's concussion

were expected to last for twelve months.  As previously noted, PA Starczewski concluded

that Plaintiff's symptomatology did not require a CT scan, and directed Plaintiff to return

to the emergency department if she developed any of the following:  severe headache,

syncope, severe nausea or dizziness.  Tr. at 663.  Plaintiff did not return.  When Plaintiff

followed up with her primary care provider, Dr. McAuley's notes from October 29, 2020,

do not indicate any required or recommended follow up or instructions regarding the

concussion or post-concussion syndrome.  Id. at 654.  Moreover, during the

administrative hearing, Plaintiff did not mention any on-going symptoms or

---

[16]In finding Plaintiff's concussion and hip pain to be not severe, the ALJ stated:
"These impairments either did not exist for a continuous period of twelve months; were
responsive to medication; are accommodated by the determined [RFC]; did not require
significant medical treatment; or did not result in any continuous exertional or non-
exertional functional limitations."  Tr. at 19.

exacerbations related to her concussion.[17]  Thus, to the extent it relied on the duration requirement in considering Plaintiff's concussion, the ALJ's opinion is supported by substantial evidence.

## IV.    CONCLUSION

The ALJ's decision properly accounted for the opinion of consultative examiner Hammons and the evidence regarding Plaintiff's concussion, and is supported by substantial evidence.

An appropriate Order follows.

---

[17]Plaintiff did testify to headaches and dizzy spells due to FMD.  See tr. at 50. However, Plaintiff did not raise any challenge to the ALJ's conclusion that her FMD was not medically determinable.  See id. at 20.